UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
DEBORAH L. BOARDMAN
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
Fax: (410) 962-2577
MDD_DLBChambers@mdd.uscourts.gov

July 26, 2021

LETTER TO COUNSEL

    RE:    *David R. v. Kijakazi*[1]
            Civil No. DLB-20-1277

Dear Counsel:

      On May 21, 2020, plaintiff petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny his claim for Disability Insurance Benefits. ECF 1. I have considered the parties' cross-motions for summary judgment and plaintiff's response. Pl.'s Mem., ECF 16; Def.'s Mem., ECF 17; Pl.'s Reply, ECF 18. I find no hearing necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the denial if the SSA employed correct legal standards and made findings supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the Commissioner's decision in part, and remand the case to the Commissioner for further consideration. This letter explains my rationale.

      Plaintiff filed his claim for benefits on December 23, 2015, alleging an onset date of June 3, 2013. Administrative Transcript ("Tr.") 201. The SSA denied his claims initially and on reconsideration. Tr. 75, 87. An Administrative Law Judge ("ALJ") held a hearing on March 13, 2019, Tr. 41–65, at which plaintiff amended his alleged onset date to July 1, 2014, Tr. 48–49. Following the hearing, the ALJ determined plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 20–40. Because the Appeals Council denied plaintiff's request for review, the ALJ's decision constitutes the final, reviewable decision of the SSA. Tr. 11–16; *see Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); *see also* 20 C.F.R. § 422.210(a).

---

[1] Kilolo Kijakazi recently became the Acting Commissioner of Social Security. *Office of the Commissioner*, SOC. SEC. ADMIN., www.ssa.gov/org/coss.htm (last visited July 21, 2021). Pursuant to the last sentence of 42 U.S.C. § 405(g), actions brought under that Section "survive notwithstanding any change in person occupying the office of the Commissioner of Social Security." Substitution of the successor as the party in interest is automatic. Fed. R. Civ. P. 25(d).

*David R. v. Kijakazi*
Civil No. DLB-20-1277
July 26, 2021
Page 2

The ALJ found plaintiff severely impaired by "obesity, degenerative disc disease of the lumbar spine, right inguinal hernia status – post repair with mesh in April 2011; fibromyalgia; a mental impairment variously diagnosed as bipolar disorder, bipolar disorder not otherwise specified, bipolar affective disorder not otherwise specified, bipolar 1 disorder without psychotic features, borderline personality disorder, adjustment disorder, anxiety, depression, posttraumatic stress disorder, major depressive disorder, and generalized anxiety disorder." Tr. 25. Despite these impairments, the ALJ determined plaintiff retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) provided such work does not require performing more than simple, 1 – 4 step, routine, repetitive tasks in a low – stress work environment, defined as requiring only occasional decision – making and occasional changes in the work setting, where there would be only occasional contact with co – workers and supervisors and no contact with the general public, and which not require a fast pace or production quotas such as would customarily be found on an assembly line.

Tr. 28. After considering the testimony of a vocational expert ("VE"), the ALJ determined plaintiff could not perform his past relevant work but could perform other jobs existing in significant numbers in the national economy. Tr. 33–34. Therefore, the ALJ concluded plaintiff was not disabled. Tr. 35.

On appeal, plaintiff argues that the ALJ erroneously assessed the limiting effects of plaintiff's fibromyalgia in contravention of Social Security Ruling ("SSR") 12-2p, 2012 WL 3104869 (July 25, 2012), and *Arakas v. Commissioner, Social Security Administration*, 983 F.3d 83 (4th Cir. 2020). I agree that the ALJ's analysis fails to comport with *Arakas*' requirements. Accordingly, I remand but express no opinion as to plaintiff's ultimate entitlement to benefits.

Fibromyalgia is assessed using a two-step framework. 20 C.F.R. § 404.1529; SSR 12-2p. First, ALJs must assess the objective medical evidence and determine whether the plaintiff has a medically determinable impairment. *Id.* § 404.1529(b); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). Second, if the ALJ finds a medically determinable impairment, the ALJ assesses the plaintiff's symptoms to determine how the symptoms' intensity and persistence affect the plaintiff's ability to work. *See* 20 C.F.R. § 404.1529(c); SSR 16-3p. At the second step, the plaintiff is not generally required to produce objective evidence of the pain itself or its intensity. *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989). The Fourth Circuit recently held that this evidentiary rule is particularly forceful in cases where plaintiffs are impaired by fibromyalgia—"a disease whose symptoms are entirely subjective, with the exception of trigger-point evidence." *Arakas*, 983 F.3d at 97 (citing *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)). Because "[o]bjective indicators such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects of . . . fibromyalgia," the Fourth Circuit held that "ALJs may not rely on objective medical evidence (or lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia." *Id.*

*David R. v. Kijakazi*
Civil No. DLB-20-1277
July 26, 2021
Page 3

      In this case, the ALJ's discussion of plaintiff's fibromyalgia is scant. The ALJ found that plaintiff's fibromyalgia was a severe impairment. Tr. 25. However, the ALJ did not discuss the factors he weighed in making that conclusion. *See* Tr. 25–28. The ALJ also did not discuss whether plaintiff's fibromyalgia equaled a listing. *See* Tr. 25–28; SSR 12-2p, 2012 WL 3104869, at *6 ("[Fibromyalgia] cannot meet a listing in appendix 1 because [it] is not a listed impairment. At step 3, therefore, we determine whether [fibromyalgia] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment."). The only discussion of plaintiff's fibromyalgia came during the RFC discussion. *See* Tr. 23–35. First, the ALJ acknowledged plaintiff's allegations with respect to his fibromyalgia:

> [Plaintiff] also reports that he has fibromyalgia, including symptoms of chronic pain, fatigue[,] and cognitive deficits. Moreover, [plaintiff] alleges that his pain symptoms limit his ability to lift and carry heavier objects, and that the side effects of his medications limit his ability to operate heavy machinery, including motor vehicles.

Tr. 29 (internal citations omitted). Next, the ALJ found that plaintiff's impairments could reasonably have caused the symptoms he alleged but that plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." Tr. 29.

      The ALJ discussed the physical effects of plaintiff's fibromyalgia in only one paragraph. In it, the ALJ overwhelmingly referenced normal objective findings:

> Physical examinations have shown that [plaintiff] has a diffuse tenderness throughout his musculoskeletal system, tenderness to palpitation in his lumbar spine; tenderness at 18/18 fibromyalgia trigger points; as well as pain upon range of motion in his cervical spine, his left shoulder, and his hips. *However*, physical examinations have also indicated that [plaintiff] has a normal range of motion in his upper and lower extremities bilaterally; full 5/5 motor strength throughout; normal muscle tone throughout; and intact sensation throughout. Additionally, [plaintiff] has usually demonstrated a normal gait and station as well as a normal posture, although he has been observed as ambulating with a cane on at least one occasion. Furthermore, [plaintiff's] medical history indicates that his pain symptoms have responded positively to conservative means of treatment. [Plaintiff] has informed healthcare providers that the medications such as tizanidine alleviate [his] pain symptoms by up to 70 percent, and [he] has reported that he experiences effective relief from using a Transcutaneous Electrical Nerve Stimulation (TENS) unit. Therefore, the medical evidence supports finding that the claimant's symptoms in his musculoskeletal system can be adequately accommodated by limiting [him] to light work.

Tr. 30 (emphasis added) (internal citations omitted). This paragraph makes clear that the ALJ used "objective medical evidence (or lack thereof)— . . . as one of multiple factors—to discount [plaintiff's] subjective complaints regarding symptoms of fibromyalgia." *See Arakas*, 983 F.3d at 97. After citing medical examinations that supported plaintiff's subjective complaints of pain from fibromyalgia, the ALJ contrasted them with examinations indicating a normal range of motion, full motor strength, normal muscle tone, intact sensation, and normal gait, station, and posture, ultimately concluding that his symptoms could be accommodated by light work. This was legal error. *Arakas* prohibits using normal, objective results to discount the intensity and persistence of a claimant's fibromyalgia symptoms, including pain.

The Commissioner alternatively argues with respect to this paragraph that the ALJ cited the normal, objective findings in reference to plaintiff's other severe impairments and the pain plaintiff alleges they caused him. Def.'s Mem. 8–9. The ALJ discussed all of plaintiff's physical symptoms in two paragraphs, at times referring to them as "musculoskeletal" impairments. Tr. 29–30. The first paragraph references plaintiff's lumbar spine and repaired hernia and contains a detailed account of the radiographic evidence of those impairments. *See* Tr. 29–30. The second paragraph, quoted above, specifically mentions plaintiff's fibromyalgia, tender trigger points, "diffuse tenderness throughout his musculoskeletal system," and pain upon range of motion in his "cervical spine, his left shoulder, and his hips." Tr. 30. Plaintiff's other severe physical impairments include obesity, lumbar disc disease, and a repaired hernia—all of which bear much less than plaintiff's fibromyalgia on the allegations of pain the ALJ cited at the top of the paragraph. Further, the ALJ had already discounted plaintiff's allegations of pain from his lumbar spine impairment and repaired hernia in the preceding paragraph by citing other objective findings relevant to those impairments. Tr. 29–30. Thus, I disagree with the Commissioner that the ALJ did not consider this objective evidence in reference to plaintiff's fibromyalgia.

The Commissioner also argues that the ALJ complied with the regulations, which provide that adjudicators "will evaluate [a claimant's] statements *in relation to* the objective medical evidence and other evidence, in reaching a conclusion as to whether [the claimant] is disabled." 20 C.F.R. § 404.1529(c)(4) (emphasis added). In instances of fibromyalgia, this regulation must be interpreted and applied through the lens of *Arakas*. The Fourth Circuit pointed out that, with respect to fibromyalgia, the objective medical evidence bears little to no relation to the disabling limitations caused by that impairment. *See Arakas*, 983 F.3d at 97 ("Objective indicators such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects of . . . fibromyalgia, based on the current medical understanding of the disease."). *Arakas* prohibits a specific use of evidence that, with respect to fibromyalgia, runs counter to the present understanding of that disease. Thus, after *Arakas*, the use of objective medical evidence *to discount* the disease's limiting effects is improper in the Fourth Circuit.

The Commissioner also argues that "[p]roperly read, *Arakas* stands for the proposition that an ALJ cannot place undue emphasis on the lack of objective physical examination findings for a condition that under the prevailing medical understanding and the Commissioner's policy is not associated with such manifestations, specifically fibromyalgia." Def.'s Mem. 6. This Court has considered and rejected that description of the precedential value of *Arakas*. *See Charlene S. v.*

*David R. v. Kijakazi*
Civil No. DLB-20-1277
July 26, 2021
Page 5

*Saul*, No. DLB-20-853, 2021 WL 2141501, at *2–3 (D. Md. May 26, 2021) (distinguishing between the dual reasons for remand in part III.A of *Arakas*, one of which was a reiteration of existing law and the other of which established new precedent with respect to fibromyalgia). For the same reason, the Commissioner's argument that the ALJ did not err because he "did not rely solely on objective evidence to support the RFC findings," Def.'s Mem. 6, is unpersuasive. After *Arakas*, an ALJ errs where he relies on objective evidence—"even as just one of multiple factors"—to discount a claimant's symptoms of fibromyalgia. 983 F.3d at 97.

    For the reasons set forth herein, plaintiff's motion for summary judgment, ECF 16, is denied, and the Commissioner's motion for summary judgment, ECF 17, is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is reversed in part due to inadequate analysis. The case is remanded for further proceedings in accordance with this opinion.

    Despite the informal nature of this letter, it should be flagged as an opinion. A separate order follows.

                                                  Sincerely yours,

                                                  /s/

                                                  Deborah L. Boardman
                                                  United States District Judge